# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE & CASUALTY CO. a/s/o LUGRETTA BRYANT** | : : | **CIVIL ACTION** |
| *Plaintiff* | : : | **NO. 19-1947** |
| **v.** | : : | |
| **JOSHUA COHEN,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                     SEPTEMBER 8, 2020

## MEMORANDUM OPINION

**INTRODUCTION**

      State Farm Fire & Casualty Co. ("Plaintiff" or "State Farm"), as the subrogee of policyholder Lugretta Bryant ("Tenant"), filed a complaint against Defendants Joshua Cohen ("Defendant Cohen") and General Electric Company ("GE"),[1] to recover monies paid to Tenant for damages suffered as a result of a kitchen fire in a rental property leased to Tenant by Defendant Cohen. [ECF 1]. At the heart of Plaintiff's negligence claim against Defendant Cohen is a microwave, which Plaintiff contends was not properly maintained by Defendant Cohen, the owner of the rental property leased to Tenant. Prior to the commencement of this action, however, the microwave disappeared, thereby giving rise to the primary, dispositive issue at the core of Defendant Cohen's underlying motion for summary judgment, *i.e.*, causation. In the underlying motion for summary judgment, [ECF 29], Defendant Cohen argues that Plaintiff has failed to present evidence necessary to demonstrate that the kitchen fire originated in the microwave and/or

---

[1]      In the complaint, Plaintiff alleges that GE manufactured a microwave that Plaintiff contends caused a fire in the rental property that damaged Tenant's personal property  By Order dated April 15, 2020, this Court granted GE's motion for summary judgment on the basis of Plaintiff's admitted failure and inability to provide adequate evidence of causation to sustain its claims for negligence, strict liability, and breach of implied warranty against GE.  [*See* ECF 42].

that Defendant Cohen's failure to properly maintain the microwave caused the fire. In its response in opposition, Plaintiff contends solely that it is entitled to an inference in its favor on causation due to Defendant Cohen's failure to preserve the microwave for inspection.[2] [ECF 35].

The issues raised in Defendant Cohen's motion for summary judgment have been fully briefed and are ripe for disposition. For the reasons set forth herein, this Court finds that Plaintiff has not met its burden with respect to the requested spoliation inference and, consequently, has not met its summary judgment burden with respect to causation. Accordingly, Defendant Cohen's motion for summary judgment is granted, and judgment is entered in favor of Defendant Cohen.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:

> On September 10, 2015, Tenant signed a lease to rent a residential unit (the "Unit") located in Philadelphia, Pennsylvania, and owned by Defendant Cohen. The lease was to commence on October 1, 2015. Tenant lived in the Unit with her fiancé, Teresa Smith, and family. While renting the Unit, Tenant held a renter's insurance policy that she purchased from State Farm.
>
> Shortly before Tenant moved in, Defendant Cohen hired a contractor to renovate the Unit and replace all of the kitchen appliances. One of the new appliances installed was the microwave manufactured by GE, which Defendant Cohen purchased from a local "scratch and dent" outlet on September 16, 2015, and installed before Tenant's lease began. When Tenant and her family moved into the Unit, Tenant complained to Defendant Cohen that the color of some of the appliances did not match, but otherwise the unit was in "pristine condition."

---

[2] After briefing closed on the underlying motion, Plaintiff filed a motion seeking an adverse inference based on spoliation, [ECF 49], in which Plaintiff repeats the arguments originally raised in its opposition to Defendant Cohen's motion for summary judgment with respect to the adverse inference on causation. In adjudicating the underlying motion for summary judgment, this Court has also considered the arguments provided in Plaintiff's motion for an adverse inference and Defendant Cohen's response thereto. [ECF 50].

2

In the early morning hours of May 6, 2017, a fire broke out at the property while Tenant slept downstairs on the couch. At her deposition, Tenant testified that after being awakened, she quickly noticed that "the kitchen was orange" and immediately ran upstairs to alert her family of the fire. Tenant testified that she was able to see most of the kitchen from her vantage point on the couch, but was not able to "see the microwave, [or] the stove." No one present in the Unit at the time of the fire went into the kitchen to inspect the area while the fire burned. Tenant testified that she had not entered the kitchen the night before. After the fire, Tenant told her fiancé that she did not know what had started the fire.

After the fire, Tenant and her family were "under the impression" that they were going to move back into the Unit once Defendant Cohen completed his repairs and replaced the damaged fixtures and appliances. Operating under this assumption, Tenant and Ms. Smith took it upon themselves to clean the unit "as quickly as possible" in order to leave the "cramped" hotel room where they were staying and resume living in the Unit once repaired. Although they acted swiftly, both Tenant and Ms. Smith testified that they recognized the importance of the microwave and knew it "had to stay" in the kitchen, as it would be needed for investigation. With respect to their desire and expectation that they would move back into the apartment, Tenant testified:

> A: And like I said, we was under the impression that we were going to move back in, so we just wanted to – well, [Defendant Cohen] wanted all of the stuff out so we can – so he can get started back on the property. So – and we wanted to move back in because we was cramped, like, sleeping on top of each other in a hotel room.
>
> ***
>
> A: So, we just wanted to move as quickly as possible.
>
> ***
>
> A: . . . because we was really under the impression that we was moving back in. Like, we was under the impression that [Defendant Cohen] was going to get this house fixed and we was going to right move back in. So, we just wanted to get this stuff done.

Within eight days of the fire, State Farm hired fire investigator Lou Gahagan to investigate the cause and origin of the fire. When Mr. Gahagan conducted his investigation, the microwave was in the Unit. Though he did not make a definitive conclusion as to the source of the fire, Mr. Gahagan observed that most of the fire damage in the kitchen was "in the stove and microwave area." Mr. Gahagan purportedly rendered a report of his findings and provided it to Plaintiff. Notably,

3

State Farm did not submit and has not submitted this report, or any other expert report, to the Court to support its claim or contentions as to the cause of the fire.[3] After his inspection, Mr. Gahagan informed Defendant Cohen of the importance of preserving the scene of the fire and not moving anything, including the microwave and stove, until Mr. Gahagan could return to the scene with a representative from Defendant Cohen's insurance company. Defendant Cohen does not recall having spoken to Mr. Gahagan.

At some unspecified time, either during Mr. Gahagan's initial visit or during a separate visit to the Unit, State Farm dispatched two representatives to conduct a walkthrough of the unit. Plaintiff's two representatives were joined by Tenant, Ms. Smith, and Mr. Edgar Dean, a public adjustor who Tenant retained to assist with her personal insurance claim. During this walkthrough, the "burnt up" microwave was present in the Unit and available for inspection. Ms. Smith testified that the group went into the kitchen and that she recalled one of the State Farm representatives "looking and saying that the fire nine out of ten started with the microwave overheating or something with the sensor. Something to that matter." Ms. Smith could neither recall the names of State Farm's representatives nor describe them. She testified that after this walkthrough there was another walkthrough with Mr. Dean, Tenant, Ms. Smith, and another unnamed person that resulted in another inspection of the kitchen. Neither party proffered any evidence as to the identity of this unnamed person.

In the interim, Defendant Cohen gave Tenant and her family permission to access the Unit in order to salvage their belongings and clean out the unit. In June 2017, Ms. Smith hired two men from the neighborhood, known to her as "Keith" and "Miles," to help clean out the entire unit. Previously, Ms. Smith had employed Keith and Miles for other odd jobs, but she did not know the men's full names or where they lived. According to Ms. Smith, they did not discard any kitchen appliances at that time.

On July 12, 2017, Tenant sent a text message to Mr. Dean asking if it was "okay for [Tenant and her family] to take all of this stuff out of the house" and begin the process of removing the damaged appliances, believing that State Farm had already completed its inspections. On this matter, Tenant testified as follows:

> Q: All right. So, you talked about some of the text messages between you and Mr. Dean back in July and you indicated that he said it was okay to clean out everything?

---

[3] On April 10, 2020, after Mr. Gahagan had apparently testified during an arbitration hearing of this matter, and after Plaintiff raised its spoliation argument in response to Defendant Cohen's underlying motion for summary judgment, Defendant Cohen filed a motion to compel the production of Gahagan's report. [ECF 38]. Plaintiff did not file a response to the motion. By Order dated April 30, 2020, this Court directed Plaintiff to produce a copy of Gahagan's report to Defendant Cohen. Plaintiff has never submitted the report, or any other purported expert report, to this Court for consideration.

4

> A: Yes.
>
> Q: What did that mean to you? "Clean out everything" meaning what?
>
> A: Like, take out everything the house because he – the reason why I asked him was it okay, because they already did a walk-through by then.
>
> Q: Who is "they?"
>
> A: State Farm and [Edgar Dean].
>
> ***
>
> Q: Were you with State Farm when – the representatives of State Farm, when they did the walk-through?
>
> A: I don't remember, but I'm almost sure I wasn't because [Edgar Dean] was handling all of that and I just was going to work.
>
> ***
>
> Q: So, in July, then, when Mr. Dean said it was okay to clean out everything because State Farm had done its walk-through, what, specifically, did you all clean out?
>
> A: Every last single thing.

After receiving assurances from Mr. Dean that it was permissible for Tenant and Ms. Smith to clean out the Unit because State Farm had finished its inspections, Ms. Smith again hired Keith and Miles to assist with cleaning out the Unit. Ms. Smith testified that she, Keith, and Miles threw out many of the kitchen appliances, including the refrigerator and stove, but not the microwave. However, after being shown pictures of the kitchen taken after this second clean out, Tenant expressed uncertainty as to whether the microwave was, in fact, removed during this clean-out session. Tenant testified as follows:

> Q: Okay. So, let's talk about the kitchen. What was cleaned out of the kitchen?
>
> A: Everything was tossed out of the kitchen, everything out of the cabinets. I know [Teresa Smith] got somebody to take the refrigerator out of the house at this point. I believe she got somebody to take the stove out, too.

5

> Q: And what about the microwave?
>
> A: The microwave had to stay because – I think because it was under investigation. I think that's the only reason why the microwave stayed, but I'm not a hundred percent sure. But the microwave did stay after the fact, after everything was cleaned out.
>
> Q: And how do you know for sure that the microwave was still there?
>
> A: Because I seen the picture.

After being shown the referenced photographs and being unable to locate the microwave in the pictures of the kitchen provided, Tenant testified:

> Q: So, I'm just a little bit unclear. So, is it fair to say you're not positive that either the stove or the microwave remained in the house after you guys finished?
>
> A: Yes, it's fair to say it because I don't know because I don't see it in the picture. But I think I did.

Plaintiff did not provide any testimony from either Keith or Miles, the individuals Ms. Smith specifically identified as being the individuals who removed some of the appliances.

On September 7, 2017, after completing the cleanout, Tenant and her family vacated the Unit. Upon vacating, Tenant took photos of each room, including the kitchen, to document the condition in which she left the Unit. Ms. Smith testified that the damaged microwave was still in the Unit upon moving out. Tenant, on the other hand, testified that she "[did not] remember" whether or not the microwave remained in the unit upon moving out. Tenant's photos from the move-out day did not capture the area of the kitchen where the microwave and stove were located.

Sometime in September or October of 2017, after Tenant vacated the Unit, Defendant Cohen's handyman, Brett Gordon, entered the unit and noticed that the microwave was not there. Defendant Cohen testified that he thought this was the first time that he learned the microwave had been removed. To this day, the whereabouts of the microwave are unknown. The parties dispute when, how, and by whom the microwave was discarded. Neither party, however, has been able to definitively state when or how it went missing.[4]

---

[4] On March 27, 2020, State Farm first raised the issue of spoliation sanctions in its response to Defendant Cohen's motion for summary judgment. [*See* ECF 35]. Notably, however, record

**LEGAL STANDARD OF REVIEW**

Federal Rule of Civil Procedure ("Rule") 56 governs of summary judgment practice and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson*, 477 U.S. at 247-48). A fact is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* When deciding a Rule 56 motion, the court must consider the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 250; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant meets its initial burden, the non-moving party must rebut by "set[ting] forth specific facts showing that there is a genuine issue for trial" by identifying "some evidence in the record that creates a genuine issue of material fact." *Anderson*, 477 U.S. at 250; *see Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" then the court should grant summary judgment for the movant. *Celotex*, 477 U.S. at 322.

---

evidence demonstrates that State Farm internally noted a possible spoliation issue as early as May 22, 2018. [*See* ECF 29-17 p. 26].

**DISCUSSION**

As noted, State Farm asserts a negligence claim against Defendant Cohen premised on Defendant Cohen's alleged negligent maintenance of the microwave in the Unit. In the motion for summary judgment, Defendant Cohen argues, *inter alia*, that the negligence claim fails because State Farm has not presented evidence sufficient to show that the fire started in the microwave and/or was caused by Defendant Cohen's failure to properly maintain the microwave. In its response, Plaintiff concedes that without the microwave, "Plaintiff cannot advance a specific argument against . . . [Defendant Cohen], relating to his negligent maintenance or mishandling" of the microwave. [Plf's Resp., ECF 35, at p. 12]. Plaintiff argues, however, that its failure to meet its burden on causation is attributable to Defendant Cohen's failure to preserve the microwave for inspection and, thus, Plaintiff should be entitled to a spoliation inference in its favor on the causation element. Accordingly, before addressing the issue of causation, this Court must first determine whether Plaintiff is entitled to a spoliation inference.

*Adverse Spoliation Inference*

Spoliation occurs when one party alters, destroys, fails to preserve, or simply withholds evidence within that party's custody or control. *See Bull v. UPS*, 665 F.3d 68, 73-74 (3d Cir. 2012). When spoliation occurs, courts have the discretion to impose various sanctions upon the spoliating party after considering factors such as the spoliating party's degree of fault, the prejudice that the spoliation causes to the non-spoliating party, and whether other adequate remedies exist. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *see also Bull*, 665 F.3d at 73 n.5 (applying the *Schmid* factors). One such sanction, that sought by State Farm here, is an adverse spoliation inference. *See Schmid*, 13 F.3d at 78; *McHugh v. McHugh*, 40 A. 410, 411 (1898) ("[t]he spoliation of papers and the destruction or withholding of evidence which a party

ought to produce gives rise to a presumption unfavorable to him. . . ."). An adverse spoliation inference is an instruction to the factfinder that the missing evidence would have been unfavorable to the spoliating party. *See Schmid*, 13 F.3d at 78; 29 Am. Jur. Evidence 2d § 252 ("It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable.") (revised May 2020). Such an inference, however, is a "severe sanction" limited to egregious acts of spoliation. *See Bull*, 665 F.3d at 82; *see also Positran Mfg. v. Diebold, Inc.*, 2003 U.S. Dist. LEXIS 8114, at *8-9, *11-12 (D. Del. May 15, 2003) (imposing a spoliation inference where "extreme" and "disturbing" spoliation occurred).

When presented with an allegation of spoliation, a court must engage in a two-part analysis; *to wit*: to determine if spoliation occurred and, if it did, then decide the appropriate sanction, if any, to remedy it. *See Omogbehin v. Cino*, 485 F. App'x 606, 610 (3d Cir. 2012); *Giuliani v. Springfield Twp.*, 2015 U.S. Dist. LEXIS 74174, at *16 (E.D. Pa. June 9, 2015). To determine if spoliation occurred, the United States Court of Appeals for the Third Circuit ("Third Circuit") has established a four-element test. *See Bull*, 665 F.3d at 73-74; *E.D. v. Colonial Sch. Dist.*, 2017 U.S. Dist. LEXIS 50173, at *20-21 (E.D. Pa. Mar. 31, 2017). This "spoliation analysis" is distinct from the "sanctions analysis" and must be conducted before any determination of sanctions. *See Bull*, 665 F.3d at 73 n.5; *see also Omogbehin*, 485 F. App'x at 610. Under the Third Circuit's test, spoliation is deemed to have occurred if "(1) the evidence was within the alleged spoliator's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable." *E.D.*, 2017 U.S. Dist. LEXIS 50173, at *20-21 (citing *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 112 (E.D. Pa. 2005)); *see also Bull*, 665 F.3d at 73-74. The party seeking the spoliation

9

sanction bears the burden of establishing each of these elements. *E.D.*, 2017 U.S. Dist. LEXIS 50173, at *22-23; *see also Nwegbo v. Borough*, 2013 U.S. Dist. LEXIS 96566, at *3 (E.D. Pa. July 10, 2013) (citing *Byrnie v. Town of Cromwell, Bd. of Ed.*, 243 F.3d 93, 107-08 (2d Cir. 2001)); *Rogers v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 151818, at *10 (E.D. Pa. Oct. 22, 2012) (stating the same).

It is not disputed that the microwave was relevant evidence and that it could reasonably lead to other discoverable evidence. At issue, though, is its disappearance. To establish whether there has been actual suppression or withholding of the evidence, the Third Circuit requires a showing of intentionality and bad faith. *See Bull*, 665 F.3d at 78-79 (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). To satisfy the "actual suppression or withholding" element, the movant must demonstrate that the alleged spoliation was *intentional*—not accidental, inadvertent, or properly explainable. *See Brewer*, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."); *see also Bull*, 665 F.3d at 74-76, 79; *Omogbehin*, 485 F. App'x at 609. In addition, "actual withholding" requires the movant to demonstrate that the alleged spoliator acted in "bad faith" in his or her failure to produce or preserve the evidence at issue. *Bull*, 665 F.3d at 79. As to not understate the importance of the bad faith requirement, the Third Circuit made clear that "a finding of bad faith is pivotal to a spoliation determination." *Id.*; *see also E.D.*, 2017 U.S. Dist. LEXIS 50173, at *23 (dismissing plaintiff's spoliation claim because plaintiff did not present "any reason to believe that [defendant] acted improperly.").

10

Here, Defendant Cohen argues that State Farm has not met, and cannot meet, the spoliation requirement because State Farm has not shown the requisite intentionality and/or bad faith.[5] This Court agrees. To meet its burden on spoliation, Plaintiff merely points to Defendant Cohen's purported failure to take adequate measures to preserve the microwave. Plaintiff, however, fails to identify any intentional actions taken by Defendant Cohen to dispose of the microwave. Indeed, Plaintiff's briefs are completely devoid of any argument that Defendant Cohen disposed of the microwave intentionally and/or in bad faith. In fact, the words "bad faith" appear nowhere in any of Plaintiff's filings. At best, Plaintiff merely speculates about what Defendant Cohen failed to do or allowed to occur with respect to the disappearance of the microwave, but makes no argument as to Defendant Cohen's motive. In taking this approach, Plaintiff relies upon the mere negligence of Defendant Cohen in preserving the microwave. In the absence of any evidence that Defendant Cohen intentionally and/or in bad faith facilitated the disposal of the microwave, State Farm has not met, and cannot meet, its burden with respect to an adverse spoliation inference.

To support its request for the adverse spoliation inference and its mistaken belief that a negligent preservation of evidence is sufficient for an adverse inference, Plaintiff relies exclusively on *Travelers Property Casualty. Co. of America v. Cooper Crouse-Hinds, LLC*, 2007 U.S. Dist.

---

[5] Defendant Cohen also disputes that he or his agent was factually responsible for the disposal of the microwave or that he (as opposed to Tenant) was legally responsible to preserve the microwave. It is evident from the record that neither party was able to definitively show who, how, or when the microwave was removed. These factual disputes need not be resolved, however, since Plaintiff has failed to present any evidence of bad faith. Put differently, even if this Court were to assume that Defendant Cohen or one of his agents discarded the microwave, Plaintiff has failed to show that it was done intentionally and in bad faith.

Defendant Cohen and Plaintiff also devote considerable portions of their briefs arguing whether a spoliation inference is the appropriate sanction for this Court to employ. However, because Plaintiff fails the spoliation analysis, the issue of sanctions is not relevant. *See Omogbehin v. Cino*, 485 F. App'x 606, 610 (3d Cir. 2012); *Giuliani v. Springfield Twp.*, 2015 U.S. Dist. LEXIS 74174, at *16 (E.D. Pa. June 9, 2015) ("Only if I find that defendants have spoliated evidence must I consider whether sanctions are appropriate to redress the situation and, if so, what sanctions should be imposed.").

LEXIS 64572 (E.D. Pa. Aug. 31, 2007). State Farm's reliance is, however, misplaced. Though the court in *Cooper* took a "flexible approach" and expressly found spoliation in the absence of either intentional conduct or bad faith, *id.* at *22 n.35, *23-24, *38, its decision preceded the Third Circuit's contrary holding in *Bull*, wherein the Third Circuit clarified that the second element of the spoliation test requires both intentional withholding/destruction and bad faith. *Bull*, 665 F.3d at 79, 79 n.13; *see also Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 292 (3d Cir. 2018) (citing *Bull* and its requirement of intentionality and bad faith); *Giuliani*, 2015 U.S. Dist. LEXIS 74174, at *22-23 ("Because a finding of spoliation requires more than mere negligence I cannot here conclude that there has been spoliation of evidence given the absence of evidence that there was some bad intent or ill motive behind defendants' failure to preserve the requested evidence."). As such, State Farm's reliance on Defendant Cohen's alleged (mere) negligence in allowing the microwave to be discarded is insufficient to establish intentional conduct and/or bad faith. Accordingly, Plaintiff is not entitled to an adverse spoliation inference.[6]

### *Negligence Claim – Lack of Causation*

Having determined that Plaintiff is not entitled to a favorable spoliation inference, this Court must next determine whether Plaintiff has proffered sufficient evidence of causation to sustain his negligence claim. To sustain a claim for negligence, State Farm must present evidence

---

[6] Having determined that Plaintiff has not supported its spoliation claims, this Court need not conduct the sanction analysis. *See supra* n.5. However, even if this Court were to find that Plaintiff met its burden with respect to spoliation, this Court would not be inclined to grant Plaintiff the broad inference it seeks. Plaintiff seeks a sweeping inference that an examination of the microwave would have revealed that Defendant Cohen's negligence caused the microwave fire. However, while an inspection of the microwave by Mr. Gahagan or a fire causation expert may well have uncovered the origin of the fire, an opportunity to inspect the microwave, alone, would not reveal any information about Defendant Cohen's obligations, actions, and/or omissions with respect to the maintenance of the microwave. Therefore, this Court would only be inclined to impose an inference that an inspection of the microwave would have revealed that the fire began in the microwave, but not that Defendant Cohen's negligent maintenance caused the fire to begin in the microwave.

sufficient to demonstrate that Defendant Cohen owed Plaintiff a duty of care, breached that duty, and that Defendant Cohen's breach caused Plaintiff's damages. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 776 (3d Cir. 2018) (citing *Green v. Pa. Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015)). Causation is a "vitally important link" for any negligence claim. *Cuthbert v. Philadelphia*, 209 A.2d 261, 263 (Pa. 1965); *see also State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 439 (E.D. Pa. 2013) ("Causation is an essential element of a prima facie negligent fire claim under Pennsylvania law.") (emphasis omitted).

To demonstrate causation, Plaintiff must point to evidence showing both cause-in-fact and proximate causation. *Redland Soccer Club v. Dep't of the Army*, 55 F.3d 827, 851 (3d Cir. 1995); *Turturro v. United States*, 629 F. App'x 313, 324 (3d Cir. 2015) ("In Pennsylvania, establishing . . . a causal connection requires demonstrating both but-for causation and proximate cause.") (citing *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012)). To demonstrate cause-in-fact causation, Plaintiff must show that "but for" Defendant Cohen's negligence, Plaintiff would not have suffered harm. *See Ozer v. Metromedia Rest. Grp.*, 2005 U.S. Dist. LEXIS 3447, at *10 (E.D. Pa. Mar. 7, 2005); *Reott*, 55 A.3d at 1103. To demonstrate proximate causation, Plaintiff must show that Defendant Cohen's negligence was a "substantial cause" of Plaintiff's harm. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978); *see also Redland Soccer Club*, 55. F.3d at 851 ("Of course, under Pennsylvania law the [breach] must appear to contribute substantially to [plaintiff's] injuries") (internal quotation marks omitted).

In negligence matters where the issue of causation is arguably complex, including cases where the damage is alleged to have been caused by a fire, "a party must produce expert testimony on causation to survive a motion for summary judgment." *State Farm Fire & Cas. Co. v. Gopher Baroque Enters.*, 2010 U.S. Dist. LEXIS 137238, at *16 (E.D. Pa. Dec. 29, 2010) (citing *Oddi v.*

*Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000)); *see also Steffen*, 948 F. Supp. 2d at 439-40, 446 (granting summary judgment in defendant's favor where plaintiff's proffered expert opinion as to the cause of the underlying fire was excluded under *Daubert* and plaintiff proffered no other causation evidence); *Miller v. Davies Ford, Inc.*, 2019 WL 1530237, at * 3 (Pa. Super. Ct. Apr. 9, 2019) (affirming a grant of summary judgment on basis that plaintiff failed to demonstrate causation without expert testimony because "expert testimony was both required and necessary to prove" negligent maintenance that allegedly caused an engine fire). To be admissible, the expert testimony must opine to a reasonable degree of certainty as to the cause and origin of the fire. *See Steffen*, 948 F. Supp. 2d at 440 n.6; *Gopher Baroque Enters.*, 2010 U.S. Dist. LEXIS 137238, at *24; *see also Booth v. Black & Decker, Inc.*, 166 F. Supp. 215, 221-222 (E.D. Pa. 2001) (citing *Oddi*, 234 F.3d at 156) (holding that an expert's conclusions that "did not provide enough basic, objective information" were insufficient even after expert decided a toaster oven was likely source of fire because his inquiry was "intuitive and haphazard."). Moreover, simply because a party produces some expert testimony does not mean a court is precluded from granting summary judgment. *Gopher Baroque Enters.*, 2010 U.S. Dist. LEXIS 137238, at *17 (citing *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999)).

      Here, Defendant Cohen argues that State Farm has failed to produce sufficient evidence from which a reasonable factfinder could find that Tenant's property damage was caused by a fire that originated in the microwave and that the fire was due to Defendant Cohen's failure to maintain it. This Court agrees. As set forth above, and as State Farm seems to recognize, negligence claims based on damages caused by appliance fires almost universally require expert opinion/testimony with respect to causation. Though State Farm attempts to rely upon the arbitration testimony given by its purported fire investigator, Mr. Gahagan, to meet its burden on causation, State Farm has

not properly proffered Mr. Gahagan as an expert such that his opinion/ testimony could be admitted to support State Farm's causation theory. Indeed, State Farm has not properly proffered any expert opinion to support its causation theory.

In order to present expert opinion, a party must first provide the opposing party the identity of the person it intends to proffer as a testifying expert. Fed. R. Civ. P. 26(a)(2)(A). For any such testifying expert identified, the proffering party must provide opposing counsel with an expert report that contains (i) a complete statement of all opinions and rationale of the expert, (ii) the facts and data the expert relied upon when forming his or her opinion, (iii) any exhibits the expert used, (iv) the expert's qualifications and a list of his or her publications from the last ten years, if any, (v) a list of all other cases in which the expert has testified in the preceding four years, and (vi) a statement of the expert's compensation in the present case. Fed. R. Civ. P. 26(a)(2)(B)(i) – (vi). It is apparent from the record that Plaintiff never complied with the Rule 26 requirements in this case. More importantly, Plaintiff has never provided this Court with any report or testimony of a properly qualified expert. Plaintiff's failure to take the proper procedural steps to proffer Mr. Gahagan as an expert witness has precluded this Court from engaging in its duty to review the sufficiency of his qualifications, investigative techniques, and methodologies consistent with the "gatekeeping" responsibilities conferred by Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509, U.S. 579, 597 (1993).

In the absence of a properly proffered expert, expert opinion, or expert report, this Court is left with nothing more than the bare assertions of lay witnesses opining that most of the fire damage appeared to be near the stove and microwave. Such lay opinion is insufficient evidence from which a reasonable factfinder could infer or find that the fire originated with the microwave and/or

that Defendant Cohen's alleged failure to properly maintain the microwave caused the fire.[7] Without admissible and sufficient *expert* testimony, State Farm has not met and cannot meet its burden on causation.[8]

In addition to State Farm's failure to provide necessary expert opinion, Plaintiff has also failed to provide any evidence (expert or otherwise) to substantiate Defendant Cohen's purported failure to properly maintain the microwave. While Plaintiff's claim is premised on its theory that the fire started in the microwave, merely proving that the fire began in the microwave is not enough to hold Defendant Cohen liable for negligent maintenance of the microwave. To sustain its claim against Defendant Cohen, State Farm must produce evidence to show that Defendant Cohen failed to properly maintain the microwave *and* that such failure caused the fire. Though State Farm has offered evidence that Defendant Cohen purchased the microwave and hired a contractor to install it, State Farm has not proffered any evidence with respect to Defendant Cohen's duties, acts, or omissions with respect to maintenance of the microwave. For example, State Farm presented no evidence as to the measures Defendant Cohen took or did not take to maintain the microwave. Additionally, State Farm has presented no evidence by way of an expert or any other witness as to what reasonable measures would be expected of a landlord with respect to the maintenance of the

---

[7] It is worth noting that neither party demanded a jury trial and, thus, in any trial of this matter, this Court would serve as the trier of fact.

[8] Even if Mr. Gahagan were deemed a properly proffered and qualified expert, his testimony at the arbitration of this matter is insufficient to meet Plaintiff's summary judgment burden on causation. Plaintiff cites solely to Mr. Gahagan's arbitration testimony that most of the fire damage was "in the stove and microwave area" of the kitchen. [ECF 49]. Plaintiff does not point to any other testimony by Mr. Gahagan (or any other potential expert) regarding the fire's causation. This threadbare assertion that most of the damage appeared around the stove and microwave area is woefully insufficient to establish causation. *See Steffen*, 948 F. Supp. 2d at 440 n.6 ("[A] fire origin and causation expert will typically opine on two separate issues: the fire's point of origin and its cause."); *Gopher Baroque Enters.*, 2010 U.S. Dist. LEXIS 137238, at *24 (holding expert testimony insufficient when expert did not conclude whether an internal malfunction or user error caused dishwasher fire).

microwave; discovery of which was not dependent on the ability of State Farm or an expert to examine the actual microwave. These are facts that State Farm had ample opportunity to explore, obtain, and present through inquiries of Defendant Cohen, his property managers or agents, or the tenants themselves. Simply put, State Farm's claim against Defendant Cohen for negligent maintenance of the microwave cannot be sustained in the absence of any evidence of Defendant Cohen's failure to properly maintain the microwave.

After careful consideration of the facts and arguments made, this Court finds that State Farm has failed to present evidence sufficient to meet its burden with respect to causation. In particular, in the absence of either the requested spoliation inference or a properly proffered and qualified expert opinion that the fire began in the microwave *and* that it was caused by Defendant Cohen's failure to properly maintain the microwave, State Farm has not met its burden on causation.

**CONCLUSION**

For the reasons stated herein, Defendant Cohen's motion for summary judgment is granted. Accordingly, judgment is entered in favor of Defendant Joshua Cohen and against Plaintiff State Farm. Orders consistent with this Memorandum Opinion follow.

*Nitza I. Quiñones Alejandro,* USDC, J.